UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                              Case Number 17-20605

v.                                                 Honorable David M. Lawson

QUENTIN RASHAAN EVANS,

        Defendant.
_____/

### ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Quentin Evans has filed a motion asking the Court to resentence him to time served under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239, or alternatively, to recommend to the Bureau of Prisons (BOP) that he be transferred to home confinement under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 18 U.S.C. 12003(b)(2). The government does not dispute Evans's argument that his physical health, coupled with his conditions of confinement at FCI Hazelton where an inmate has tested positive for COVID-19, amount to extraordinary and compelling reasons for a sentence reduction under section 3582(c)(1)(A)(i). However, it contends that Evans remains a danger if he were to be released and other factors counsel against the relief he requests. Evans has not shown that the factors in 18 U.S.C. § 3553(a) that the Court must consider favor immediate release. The Court does not oppose early placement by the BOP to home confinement. The motion otherwise will be denied.

I.

After buying heroin from Evans in 2015, M.H. died from an overdose. DEA agents investigating M.H.'s death identified Evans as M.H.'s dealer, obtained a search warrant for his

house, and seized 468 grams of heroin and three loaded guns. Evans eventually pleaded guilty to drug trafficking and weapons charges, and on June 5, 2018, the Court sentenced him to prison terms totaling 144 months. Evans is currently held at FCI Ashland in Kentucky. His projected release date is October 17, 2028. He served about 24 months of his sentence.

Evans is a 45-year-old African-American man who suffers from diabetes, high cholesterol, hypertension, asthma, and chronic obstructive pulmonary disease (COPD). He takes Metformin for diabetes, Atorvastatin for cholesterol, and hydrocholorothiazide and amlodipine for hypertension daily. He also regularly uses an inhaler to control his COPD.

FCI Ashland, where Evans is held now, currently houses 1,108 inmates. Two active cases among inmates have been reported. *See* https://www.bop.gov/coronavirus/ (last visited Aug. 18, 2020). On May 14, 2020, Evans submitted a request for compassionate release to the warden of FCI Ashland, describing his medical conditions, which increase his chances of complications should he contract COVID-19. The warden denied the request on May 20, 2020. Evans then filed his motion for compassionate release with the Court on June 29, 2020.

Evans says that his vulnerability to complications from COVID-19, coupled with the difficulty of controlling the spread of the virus in a prison setting, amount to extraordinary and compelling reasons for his release. He also asserts that since he was charged in this case, he has been law abiding, having had no run ins with law enforcement during his two years of pretrial release. Nor has he had any disciplinary violations in the two years he has been in BOP custody. He also has taken eleven Adult Continuing Education programs, three of which were re-entry programs, and is currently enrolled in a non-residential drug program.

Evans also points out that the is a single father, who, before his incarceration, maintained steady employment at Ford Motor Company and a detailing company. He spent most of his time

devoted to his three children and grandchildren. He says his only wish is to re-enter society, capitalize on one of his multiple job offers, and resume his role in caring for his mother, children, and grandchildren. If released, he intends to live with his mother in Ypsilanti, Michigan.

## II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). However, prisoners may not seek judicial relief before they have sought release under this statute from the prison warden and pursued his administrative appeals from any denial or have waited 30 days after submitting his request. *Id.* at 833-34.

Under section 3582(c)(1)(A)(i), the Court can order a reduction of a sentence, even to time served, *first*, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and compelling reasons warrant such a reduction," and *third*,

the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

The government concedes that Evans has exhausted his administrative remedies, and also agrees that his health conditions place him at an elevated risk of complications from COVID-19, thereby satisfying that aspect of the statute. However, it offers several reasons for denying release. It insists that compliance with the Sentencing Commission's policy statement is mandatory, and points to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. But that requirement is a condition of 3582(c)(1)(A)(ii). Evans has invoked 3582(c)(1)(A)(i), which contains no such requirement.

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need … to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's personal circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

The sentence in this case was driven largely by the mandatory minimum prison term required for individuals possessing a firearm during a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(ii), together with the grave consequences of the defendant's heroin dealings. The Court determined at the time that the sentence was necessary to achieve the goals of sentencing Congress identified in 18 U.S.C. § 3553(a). One of the goals — protection of the public — was paramount in this case. Although one of Evans's customers did die from a heroin overdose, the Court noted that "[t]here [was] no proof, at least proof beyond a reasonable doubt, that the drugs that Mr. Evans sold were the drugs that caused the victim's death." Sentencing Hrg Tr., ECF No. 19, PageID.91. The government nevertheless insists that Evans is a menace, arguing that "[f]or years, Evans persistently inflicted that [] heightened danger presented by the combination of firearms and drugs, even worse, heroin, on the community of Ypsilanti, the same community to which he now seeks release." Response, ECF No. 40, PageID.408. It emphasized that Evans continued to sell drugs even after M.H. died in 2015. That fact was not lost on the Court at the time of sentencing.

The sentence in this case (as in every case), and therefore a sentence reduction, also must promote respect for the law. 18 U.S.C. § 3553(a)(2)(A). Evans has served only 24 months of his lengthy prison sentence. And although his statements now are replete with remorse, and his conduct in prison over the last two years has been commendable, Evans has not offered a convincing argument for why he would not return to his former illegal methods if his sentence were reduced.

Consideration of the factors in 18 U.S.C. § 3553(a) does not favor a sentence reduction.

To establish extraordinary and compelling reasons for the relief he requests, Evans points to the conditions of his physical health, arguing that he is vulnerable to complications if he were

to contract COVID-19. And he is understandably concerned about being infected with the coronavirus. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. Because there is no current vaccine, the Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States of America v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

Evans has several of the risk factors for COVID-19 complications. It is widely recognized and publicly acknowledged that persons who are diabetic or have lung disease face increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassister*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and

a compromised immune system.") (citing *Coronavirus Disease 2019 (COVID-19)*, People Who Are At Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).  The CDC specifically identified COPD as one of the underlying conditions that increase one's risk of severe illness from COVID-19.  *People with Certain Medical Conditions*, Centers for Disease Control & Prevention (Aug. 14, 2020), https://bit.ly/32UK6is.  It also identified "hypertension or high blood pressure" as a condition that "might" increase the risk for severe illness from the virus.  *Ibid.*

Although FCI Ashland, where Evans is held has reported only two active cases of COVID-19 among its inmates or staff, that fact alone does not compel the denial of Evans's motion.  *See United States v. Rahim*, No. 16-20433, 2020 WL 2604857, at *3 (E.D. Mich. May 21, 2020) ("the Court is not persuaded that a lack confirmed cases alone is a compelling reason not to grant relief if a defendant otherwise qualifies.") (citing *United States v. Pomante*, No. 19-20316, at *4 (E.D. Mich. May 15, 2020) ("Until the BOP increases its testing capacity, a lack of confirmed cases has very little bearing on the amount of actual cases in a federal prison.").  And despite FCI Ashland's low infection rate, the government conceded that the defendant demonstrated extraordinary and compelling reasons for his release.

Evans has demonstrated extraordinary and compelling reasons for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i).  But, as noted earlier, that statute requires the Court to consider the factors in section 3553(a), which strongly militate against reducing Evans's sentence at this time.  That is not to minimize the seriousness of the coronavirus pandemic or the alarming rapidity of its spread within federal prisons.  But the pandemic is a global phenomenon and some risk is inherent no matter where Evans resides, either at home or in prison.  He asserts that his risk would be lower at home, but he has not put forth any convincing evidence to demonstrate that he is at an

especially elevated risk of harm in the present situation of confinement. And Michigan has a significant number of confirmed COVID-19 cases. Although the government has acknowledged that the novel coronavirus can support a finding of "extraordinary and compelling reasons" for medically vulnerable individuals, when the factors in section 3553(a) are "considered," Evans has not shown justification to reduce his sentence to time served.

However, looking at Evans's performance over the last two years in prison, he ought to be given consideration by the BOP for placement in home confinement at the earliest appropriate date under the CARES Act, 18 U.S.C. § 12003(b)(2). The Court has no authority to order that relief. Section 12001(b)(2) is directed at the Attorney General. Under that section, "[d]esignation of an inmate's place of confinement, including placement in home confinement, rests within the absolute discretion of the BOP." *United States v. McCloskey*, No. 18-CR-260, 2020 WL 3078332, at *2 (S.D. Ga. June 9, 2020); *see also United States v. Calderon*, 901 F. App'x 730, 731 (11th Cir. Feb. 24, 2020) (explaining that under 34 U.S.C. § 60541(g)(1)(A), the Attorney General "may" release eligible elderly offenders, and the district court was without jurisdiction to grant relief). And the Court's recommendation has no binding effect on the BOP. 18 U.S.C. § 3621(b). Nonetheless, the Court recommends that the BOP give careful consideration to placing Evans in a community setting as soon as circumstances permit.

III.

Evans has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 36) is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: August 18, 2020