UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,                      Case Number 17-20605

v.                                                Honorable David M. Lawson

QUENTIN RASHAAN EVANS,

              Defendant.

_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Quentin Evans has filed a second motion asking the Court to resentence him to time served under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239, or alternatively, to recommend to the Bureau of Prisons (BOP) that he be transferred to home confinement under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 18 U.S.C. 12003(b)(2).  On August 18, 2020, the Court denied the defendant's first motion for compassionate release, finding that although he exhausted his administrative remedies and established extraordinary and compelling circumstances for release (due to his COPD and diabetes), the factors outlined in 18 U.S.C. § 3553(a) counseled against his release.  Since the Court denied Evan's motion, he has gained 20 pounds, rendering him clinically obese. Additionally, FCI Ashland, where Evans is held, recently experienced a significant outbreak of COVID-19 during which several hundred inmates were infected and six died.  However, the facility has since controlled the outbreak (no inmates and seven staff members remain infected), and no new information changes the Court's previous assessment of the section 3553(a) factors. Evans's second motion for compassionate release will be denied.

I.

As noted in the earlier opinion, Evans pleaded guilty to drug trafficking and weapons charges, and the Court sentenced him in June 2018 to 144 months in prison.  Evans still is confined at FCI Ashland in Kentucky, and his projected release date remains October 17, 2028.  He now has served about 33 months of his sentence.

After exhausting his administrative remedies, Evans moved for compassionate release on June 29, 2020, citing the health risks posed by the coronavirus pandemic in combination with other medical conditions (asthma, diabetes, hypertension, and high cholesterol).  The Court denied that motion on August 18, 2020, finding that the factors in 18 U.S.C. § 3553(a) did not favor his immediate release.  However, the Court did not oppose his early placement by the BOP to home confinement.  The defendant sought early home confinement from the Warden of FCI Ashland about two weeks later, but his request was denied.  On December 11, 2020, Evans submitted a second request for compassionate release, which the Warden also denied on January 4, 2021.  On January 15, 2021, he filed a second motion for compassionate release before the Court, citing a recent outbreak of COVID-19 at FCI Ashland and recent weight gain.

Evans is a 45-year-old African-American man who suffers from diabetes, high cholesterol, hypertension, asthma, and chronic obstructive pulmonary disease (COPD).  He takes Metformin for diabetes, Atorvastatin for cholesterol, and hydrocholorothiazide and amlodipine for hypertension daily.  He also regularly uses an inhaler to control his COPD.  Since August 2020, the defendant gained over 20 pounds, rendering him clinically obese at 262 pounds (BMI 31.5).

FCI Ashland currently houses 942 inmates (down from about 1,100 in August 2020), none of which have active cases of COVID-19.  *COVID-19*, Bureau of Prisons, https://www.bop.gov

/coronavirus/. Earlier, the facility had an outbreak that killed six inmates. Altogether, 343 inmates and 62 staff members have been infected; six of those staff members are currently infected.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Evans again relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at 519-20. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.*

The government continues to resist the holding in *Jones*, calling it "*dicta*" and professing to 'preserve" its argument against the application of that case's teachings. However, after *Elias*, there is not much argument to preserve; *Elias* is controlling circuit precedent.

II.

Evans argues once again that he has demonstrated extraordinary and compelling reasons for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). In the last order, the Court agreed with him. The Court denied his motion, however, because the section 3553(a) factors counselled against his release. Evans now argues that his case deserves another look because his medical conditions now render him more vulnerable to complications from a Covid-19 infection, and those health conditions must be balanced against those factors.

The Court has no quarrel with that concept. But when considering the factors as a whole, one must look at Evans's health characteristics in context to assess relative risk. That includes another pertinent consideration, which is the probability that the defendant may be exposed to the coronavirus in his present situation, which in this case appears to be nil. Recent reports indicate that the probability of infection at Ashland, although once quite high, now is very low, with no active cases among inmates. The defendant has no recognized serious medical risk factors, and there are no active coronavirus cases among inmates at his facility. He therefore has not established sufficiently that he presently faces extraordinary or compelling reasons based on his medical condition.

Moreover, Evans has not furnished any new reasons why the section 3553(a) factors favor his release. The Court's previous observations still apply today:

> The sentence in this case was driven largely by the mandatory minimum prison term required for individuals possessing a firearm during a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(ii), together with the grave consequences of the defendant's heroin dealings. The Court determined at the time that the sentence

> was necessary to achieve the goals of sentencing Congress identified in 18 U.S.C. § 3553(a). One of the goals — protection of the public — was paramount in this case. Although one of Evans's customers did die from a heroin overdose, the Court noted that "[t]here [was] no proof, at least proof beyond a reasonable doubt, that the drugs that Mr. Evans sold were the drugs that caused the victim's death." Sentencing Hrg Tr., ECF No. 19, PageID.91. The government nevertheless insists that Evans is a menace, arguing that "[f]or years, Evans persistently inflicted that [] heightened danger presented by the combination of firearms and drugs, even worse, heroin, on the community of Ypsilanti, the same community to which he now seeks release." Response, ECF No. 40, PageID.408. It emphasized that Evans continued to sell drugs even after M.H. died in 2015. That fact was not lost on the Court at the time of sentencing.
>
> The sentence in this case (as in every case), and therefore a sentence reduction, also must promote respect for the law. 18 U.S.C. § 3553(a)(2)(A). Evans has served only 24 months of his lengthy prison sentence. And although his statements now are replete with remorse, and his conduct in prison over the last two years has been commendable, Evans has not offered a convincing argument for why he would not return to his former illegal methods if his sentence were reduced.

Order Denying Mot. Compassionate Release, ECF No. 43, PageID.801.

With respect to the section 3553(a) factors, the same facts point to the same outcome.

### III.

Evans again has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's second motion for compassionate release (ECF No. 48) is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: March 8, 2021