UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUENTIN RAHSAAN EVANS,

                Petitioner,

v.

UNITED STATES OF AMERICA,

                Respondent.

Civil Case Number 19-11815
Criminal Case Number 17-20605
Honorable David M. Lawson

_____/

## OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE

Petitioner Quentin Evans pleaded guilty to possession with intent to distribute 100 grams or more of heroin and possession of a firearm in furtherance of a drug trafficking crime under a plea agreement with the government. The agreement contemplated that the advisory sentencing guideline range would equal the combined mandatory minimum sentences of 120 months, but the parties acknowledged that an upward variance may be warranted and agreed to cap it at 48 additional months. The Court accepted the agreement and sentenced Evans to a total custody sentence of 144 months, 24 months below the cap. Evans now moves to vacate his sentence, arguing that his trial counsel furnished ineffective assistance when he failed to offer mitigation evidence based on Evans's gambling addiction. The record demonstrates, however, that Evans's trial counsel's performance fell within the range of professional norms, and Evans suffered no prejudice. His motion will be denied.

I.

Evans was addicted to gambling and sold drugs to subsidize his habit. He says that for over a decade, he frequented local casinos at least four times a week to gamble. His mother and brother also struggled with excessive gambling. He contends here that he gambled away his savings and any money earned through his illegal conduct. He told the presentence investigator

that he was able to pay his monthly bills but gambled with his extra money, one day betting $40,000. He tells the Court now that he "was a walking exemplar of a pathological gambling disorder." The presentence investigator administered a psychological test and likewise concluded that Evans "is likely a pathological gambler." PSR ¶46.

The parties acknowledged in the plea agreement that after buying heroin from Evans in 2015, an individual, M.H., died from an overdose less than an hour later. DEA agents investigating M.H.'s death identified Evans as M.H.'s dealer, then eventually found and surveilled Evan's house. After observing foot and vehicle movement consistent with drug trafficking, officers stopped a car leaving Evans's home and seized heroin from the driver. The driver said he was a regular customer of Evans, purchasing about $160 worth of heroin from Evans every week for the previous two years. That day, the officers obtained and executed a search warrant for Evans's house and seized 468 grams of heroin from three different locations within the home. The officers also seized three loaded guns found near each stash of heroin.

On September 12, 2017, Evans was charged in an information with one count of possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 841(a)(1) and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). He waived his right to an indictment and entered into a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) on December 13, 2017. Both charges to which Evans pleaded guilty carried a mandatory minimum term of 60 months; the sentence on the section 924(c) was to run consecutive to the sentence on the other count.

Evans admitted to selling heroin to M.H. around the time of her death. He acknowledged that this circumstance qualified as relevant conduct, which could justify an above-guideline sentence, but the parties agreed that any upward variance would not exceed 48 months above the

-2-

top of the guideline range, effectively capping Evans's exposure at 168 months. The Court accepted the plea agreement.

The Court reviewed sentencing memoranda from the parties and victim impact statements from M.H.'s mother, daughter, sister, and friend. At the sentencing hearing, Evans's attorney, Steven Scharg, did not discuss Evans's gambling issue. Instead, he argued that Evans accepted responsibility for his actions, acknowledged the seriousness of his offense, and expressed "genuine remorse." Scharg pointed to Evans's expressions of remorse and other mitigating factors, like his age (43 at the time), low likelihood of recidivism, and parenting responsibilities, and asked the Court to impose the least sentence possible under Evans' plea agreement: 120 months in prison.

The Court sentenced Evans to 144 months in prison to be followed by four years of supervised release. To address Evans's gambling addiction, the Court imposed special conditions of supervised release that included mental health counseling, prohibitions against any gaming activity, and participation in an approved program for treatment of his gambling addiction.

Evans did not appeal his conviction or sentence. Later, though, he filed the present motion to vacate his sentence through new counsel. His sole argument is that his lawyer at sentencing did not address his gambling addiction adequately. He says that attorney Scharg should have produced mitigating evidence based on Evans's gambling disorder, should have prepared Evans to discuss that disability during allocution, and should have emphasized that condition himself during allocution as a basis for reducing the upward variance discussed in the plea agreement. The government has responded, and Evans filed a reply.

Evans also filed two motions for release pending a decision on his 2255 motion based in part on his fear of contracting COVID-19, which the Court denied.

II.

A.

A federal prisoner challenging his sentence under section 2255 must show that the sentence "was imposed in violation of the Constitution or laws of the United States," the sentencing court lacked jurisdiction, the sentence exceeds the maximum penalty allowed by law, or it "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). And he "must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

A claim that could have been raised on direct appeal generally is not reviewable in a section 2255 motion. *Bousley v. United States*, 523 U.S. 614, 621 (1998). However, a claim that "cannot otherwise be reviewed for the first time on a § 2255 motion can be reviewed as part of a successful claim that counsel provided ineffective assistance." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001). Claims of ineffective assistance of counsel are properly raised in a section 2255 motion. *United States v. Graham*, 484 F.3d 413, 421-22 (6th Cir. 2007) (quoting *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997)).

In a federal habeas proceeding, when the Court weighs a claim of ineffective assistance, "[a]n evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief" on his claim. *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (quotations omitted). "Where there is a factual dispute, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims," but "[a] petitioner's mere assertion of his innocence, without more, does not entitle him to an evidentiary hearing." *Ibid*. And where the

record presents "considerable doubt" about the interactions of a petitioner and his attorney, the Court should conduct an evidentiary hearing to bring clarity to the proceedings. *See Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003).

But where, as here, the existing record demonstrates no significant factual dispute, that the claims of ineffective assistance are unsupported, or that the petitioner has not met the applicable standard, no hearing is required. *Goward v. United States*, 569 F. App'x 408, 412 (6th Cir. 2014). A hearing in this case is not necessary to address Evans's ineffective-assistance-of-counsel claims because the government has not contested Evans's allegations about his interactions with his attorney or his gambling tendencies, and the record amply demonstrates that the claims lack merit.

B.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient, and that deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). An attorney's performance meets the first element when "counsel's representation [falls] below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

One way of establishing defective performance is to show that defense counsel missed a meritorious argument under the controlling law. However, the failure to file a meritless motion or raise a groundless argument does not constitute defective performance. *Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (6th Cir. 2011) (stating that an "attorney is not required to raise a non-meritorious claim" (citing *Wilson v. Mitchell*, 498 F.3d 491, 514-15 (6th Cir. 2007))); *see also Knowles*, 556 U.S. at 123 (reiterating that the "[Supreme] Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success" to avoid a finding of deficient performance under *Strickland*).

Evans says that attorney Scharg should have enlisted the services of a mental health professional, perhaps a psychologist, to establish Evans's pathological gambling addiction and call that witness at the sentencing hearing. Scharg apparently chose not to do that. It is a well-accepted proposition that if "[j]udicial scrutiny of counsel's performance must be highly deferential," *Strickland*, 466 U.S. at 689, review of counsel's strategic choices is even more constricted, *Morris v. Carpenter*, 802 F.3d 825, 843 (6th Cir. 2015) ("Courts should not second-guess counsel's strategic decisions, and should presume that counsel's conduct is reasonable.") (citing *Strickland*, 466 U.S. at 689). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.

Put another way, prevailing professional norms require that an attorney either must investigate a known potential witness or make a reasonable decision that investigating a witness is not necessary. *Hawkins v. Coyle*, 547 F.3d 540, 548 (6th Cir. 2008). But "[w]here counsel fails to investigate and interview promising witnesses, and therefore 'has no reason to believe they

would not be valuable in securing [defendant's] release,' counsel's inaction constitutes negligence, not trial strategy." *Workman v. Tate*, 957 F.2d 1339, 1345 (6th Cir. 1992) (quoting *United States ex rel. Cosey v. Wolff*, 727 F.2d 656, 658 n.3 (7th Cir. 1984)).

! The Sixth Circuit's decisions in *Cathron v. Jones*, 77 F. App'x 835 (6th Cir. 2003), and *Workman* illustrate the difference between a reasonable and an unreasonable decision not to investigate potential witnesses. In *Cathron*, counsel's decision not to investigate was reasonable because counsel "knew precisely to what each [witness] would testify and how credible each was as a witness" after having observed the witnesses in an earlier trial. *Id.* at 841-42. In *Workman*, the court held counsel acted unreasonably by failing to investigate the only two witnesses — aside from the defendant and the arresting police officer — who observed the conduct that resulted in the defendant's arrest. *Id.* at 1345.

Here, Evans contends that a psychologist would have established Evans's gambling addiction as a mental health deficit that compelled him to engage in drug selling to fuel that addiction. That is a plausible argument. The American Psychiatric Association has reclassified pathological gambling from an impulse control disorder to an addiction-related disorder, and numerous courts have recognized that gambling disorders may be a relevant factor to consider when imposing criminal sentences. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–V") 585 (5th ed. 2003); Ferris Jabr, *How the Brain Gets Addicted to Gambling*, Scientific American, Nov. 5, 2013; *see also United v. Sadolsky*, 234 F.3d 938, 943-44 (6th Cir. 2000) (district court was permitted to depart downward on sentencing in computer fraud case based on defendant's alleged gambling disorder); *United States v. Dikiara*, 50 F. Supp. 3d 1029, 1032 (E.D. Wis. 2014) (considering gambling as a mitigating factor in mail fraud case); *United States v. Quinn*, 566 F. App'x 659, 671 (10th Cir. 2014) (considering gambling

addiction in sentencing, but affirming district court's decision not to vary downward in tax evasion case); *United States v. Vieke*, 348 F.3d 811, 812-13 (9th Cir. 2003) (considering gambling addiction as "aberrant behavior" in sentencing and affirming district court's decision to vary downward in identity theft case).

The *Dikiara* court explained the significance of struggling with a gambling disorder: "'[b]y physically hijacking the brain, [gambling] addiction diminishes the addict's capacity to evaluate and control his or her behaviors. Rather than rationally assessing the costs of their actions, addicts are prone to act impulsively, without accurately weighing future consequences.'" *Dikiara*, 50 F. Supp. 3d at 1032 (quoting *United States v. Hendrickson*, No. CR 13-4110, 2014 WL 2600090, at *5 (N.D. Iowa June 11, 2014)).

But in this case, Scharg did not need a psychologist to establish that point. The presentence investigator already came to that conclusion. And Evans himself was well prepared to discuss his gambling problems at the presentence interview, which Scharg also attended. What more could a psychologist have added? It is hard to say, since Evans's post-conviction attorney, ironically, chose not to submit an affidavit from a mental health professional to tell us. Because Evans has not identified the substance of the testimony that would have been given by a potential mental health witness, he has not advanced a sufficiently grounded claim that his trial counsel was ineffective by failing to locate, interview, or call one to testify. *Charette v. Bell*, 106 F. App'x 327, 331 (6th Cir. 2004) ("Charette's claim that DuBusk failed to prepare adequately for trial, by failing to interview various, unnamed witnesses, suffers under the same defect as the argument above. . . . Although Charette asserts that there were witnesses who should have been interviewed by DeBusk, he does not point to any specific witnesses or what their testimony might have added to Charette's defense. Charette has also failed to provide the court with any argument regarding

how this failure adversely affected his right to a fair trial. Because Charette has identified no witness who would have presented an alternative version of the events of December 25, 1987, or how this testimony would have affected the trial's outcome, there is simply no basis for concluding that DeBusk's failure to call other witnesses constitutes ineffective assistance to Charette."); *Moss v. Hofbauer*, 286 F.3d 851, 868-69 (6th Cir. 2002) ("The problem with Moss's argument . . . is that he does not identify any witnesses that his counsel should have called . . . . In addition, because Moss's allegations are conclusory, he is unable to show a reasonable probability that the result of his trial would have been different even if his counsel had performed in some other manner. We therefore conclude that Moss failed to establish an ineffective-assistance-of-counsel claim based upon the contention that his counsel did not present a significant adversarial challenge.").

Moreover, Scharg's decision to emphasize Evans's acceptance of responsibility, and not his gambling pathology, as a mitigating rationale was a reasonable strategy. The two mitigating bases were not mutually exclusive. But Evans was faced with the damning fact that one of his drug customers overdosed and died shortly after purchasing heroin from him. The record contained compelling accounts from the victim's relatives about their loss, the victim's struggles with her addiction, and Evans's accountability for her troubles. They asked for a substantial sentence because of Evans's disregard for the consequences of his drug selling. The emphasis of Evans's acknowledgement of those consequences and an acceptance of his responsibility for them, without attempting to excuse his actions because of his gambling pathology and his need to raise money by whatever means to satisfy it, cannot be viewed as an unreasonable defense mitigation strategy.

Evans has not shown that his trial attorney performed deficiently.

Evans also comes up short on a showing of prejudice.  He must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  The Supreme Court clarified that "any amount of actual jail time has Sixth Amendment significance."  *Glover v. United States*, 531 U.S. 198, 203 (2001).  Thus, even a single day of additional time in prison is presumably significant enough to demonstrate prejudice.  *Ibid.*  But on this record, there is no chance — none — that Evans's sentence would have been shorter even if he presented psychological evidence of his gambling pathology in mitigation.

As noted above, the Court was aware of Evans's gambling addiction and imposed special conditions of supervised release to address them.  Even in the heightened context of death-penalty cases, counsel's "failure to present additional mitigating evidence that is 'merely cumulative' of that already presented does not rise to the level of a constitutional violation."  *Broom v. Mitchell*, 441 F.3d 392, 410 (6th Cir. 2006).  "[T]o establish prejudice, the new evidence that a habeas petitioner presents must differ in a substantial way — in strength and subject matter — from the evidence actually presented at sentencing."  *Ibid.* (citing *Clark v. Mitchell*, 425 F.3d 270, 286 (6th Cir. 2005)); *see also Morris v. Carpenter*, 802 F.3d 825, 843 (6th Cir. 2015); *Jackson v. Bradshaw*, 681 F.3d 753, 770 (6th Cir. 2012); *Woratzeck v. Stewart*, 97 F.3d 329, 336 (9th Cir. 1996) (failure to investigate mitigating evidence or present witnesses at death penalty sentencing did not prejudice defendant because the information the witnesses would have provided was in the presentence report, which the court considered).

And district courts addressing cumulative arguments beyond the capital sentencing context have arrived at similar conclusions.  *See United States v. Bates*, No. 16-20280, 2019 WL 2285180,

at *2 (E.D. Mich. May 29, 2019) (counsel not found defective for failing to order psychological evaluation as mitigating evidence when the court was aware of the petitioner's "bipolar depression schizophrenia," the subject was noted at sentencing, and the court added supervision conditions addressing petitioner's mental health); *United States v. Winans*, No. 12-20598, 2017 WL 1354138, at *12 (E.D. Mich. April 13, 2017) ("Petitioner . . . fails to establish that he was prejudiced as a result of [counsel's] alleged failures . . . Much of these 'mitigating circumstances' were known to the Court at the time of sentencing."); *Holmich v. United States*, No. 16-3023, 2016 WL 5341227, at *5 (C.D. Ill. Sept. 22, 2016) ("Courts generally decline to find prejudice in a trial counsel's failure to argue certain evidence in mitigation when the evidence was before the sentencing court.").

And the absence from this record of any submission by a psychologist undercuts Evans's claim of prejudice. "Without producing or otherwise detailing the [potential] witnesses' testimony, the petitioner's claim essentially relies on 'speculation about what unidentified persons might have said,' and such a showing fails to carry [the petitioner's] burden to show prejudice." *Veal v. Cooper*, 936 F. Supp. 511, 514-15 (N.D. Ill. 1996) (citations omitted); *see also Dell v. Straub*, 194 F. Supp. 2d 629, 650 (E.D. Mich. 2002) (concluding that defense counsel's failure to present witnesses did not amount to ineffective assistance of counsel because the defendant failed to identify the witnesses, indicate their availability, or specify the content of their testimony). Evans falls short of establishing prejudice on this part of his claim because he has offered nothing to substantiate what this hypothetical expert would have said. Speculation is not a substitute for hard information. *See Keith v. Mitchell*, 455 F. 3d 662, 672 (6th Cir. 2006).

-12-

III.

Evans has not overcome the high bar required to demonstrate defective performance or prejudice under *Strickland*.

Accordingly, it is **ORDERED** that the petitioner's motion to vacate sentence (ECF No. 21) is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Date:   February 28, 2022