UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

|                          |                                    |
|--------------------------|------------------------------------|
| Plaintiff,               | Case Number 17-20605               |
| v.                       | Honorable David M. Lawson          |

QUENTIN RASHAAN EVANS,

Defendant.

_____/

## ORDER DENYING THIRD MOTION FOR COMPASSIONATE RELEASE

Defendant Quentin Evans has filed a third motion asking the Court to resentence him to time served under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. On August 18, 2020, the Court denied the defendant's first motion for compassionate release, finding that although he exhausted his administrative remedies and established extraordinary and compelling circumstances for release (due to his COPD and diabetes), the factors outlined in 18 U.S.C. § 3553(a) counseled against his release. On March 8, 2021, the Court denied his second motion for similar reasons. Now, Evans contends that his health has declined to a point where release is necessary. Evans's medical concerns are not frivolous, but he has not established that they are extraordinary and compelling. Even if he had, he has not adequately explained why the Court ought to revisit its previous conclusions that the section 3553(a) factors do not favor release. Evans's third motion for compassionate release will be denied.

I.

The background of this case, discussed in the previous orders, is repeated here for convenience of the reader, supplemented with Evans's new information. Evans was addicted to

gambling and sold drugs to subsidize his habit. In his plea agreement, he acknowledged selling heroin to an individual, M.H., who died from an overdose less than an hour later.  DEA agents investigating M.H.'s death identified Evans as M.H.'s dealer, then eventually found and surveilled Evan's house.  After observing foot and vehicle movement consistent with drug trafficking, officers stopped a car leaving Evans's home and seized heroin from the driver.  The driver said he was a regular customer of Evans, purchasing about $160 worth of heroin every week for the previous two years. That day, the officers obtained and executed a search warrant for Evans's house and seized 468 grams of heroin from three different locations within the home. The officers also seized three loaded guns found near each stash of heroin.

On September 12, 2017, Evans was charged in an information with one count of possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 841(a)(1) and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).  He waived his right to an indictment and entered into a guilty plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) on December 13, 2017.  Both charges to which Evans pleaded guilty carried a mandatory minimum term of 60 months, with the sentence on the firearm charge to be served consecutively to the sentence on the other count.  Evans admitted to selling heroin to M.H. around the time of her death. He acknowledged that this circumstance qualified as relevant conduct, which could justify an above-guideline sentence, but the parties agreed that any upward variance would not exceed 48 months above the top of the guideline range, effectively capping Evans's exposure at 168 months.  The Court accepted the plea agreement and sentenced Evans to 144 months in prison to be followed by four years of supervised release.

Evans did not appeal his conviction or sentence.  Subsequently, he filed a motion to vacate his sentence under 28 U.S.C. § 2255. His sole ground for relief was that his lawyer at sentencing

did not address his gambling addiction adequately.  The Court determined that this argument lacked merit and denied the motion.  ECF No. 62.  Evans has filed two previous motions for compassionate release during his incarceration.  In his first, he argued that his health conditions, coupled with the spread of COVID-19 in his prison amounted to extraordinary and compelling reasons and the section 3553(a) factors favored release.  The Court agreed that Evans had established extraordinary and compelling reasons but determined that the section 3553(a) factors — most notably, the protection of the public and the need to promote respect for the law — did not support release.  ECF No. 43, PageID.801-03.  A few months later, Evans moved for compassionate release again.  This time, he argued his medical conditions and a recent weight gain rendered him more vulnerable to complications from a COVID-19 infection.  In the order denying his request, the Court acknowledged that Evans's health conditions were relevant to his risk of contracting COVID but found that the risk of COVID infection at his prison had declined substantially since his previous motion.  *See* ECF No. 59.  The Court also emphasized that Evans had failed to offer any grounds for reconsidering its previous analysis of the section 3553(a) factors.

In his present motion, Evans contends that his health has further deteriorated since his previous motion was filed and the BOP has failed to provide him with adequate medical care.  If judged by documentation alone, the latter contention is undermined by the nearly 2,000 pages of medical records submitted by the government.  According to the most recent records, Evans suffers from Type-2 diabetes, hyperlipidemia, chronic obstructive pulmonary disease (COPD), a disorder of his toenails, stage three kidney disease, unspecified heart disease, and is positive for the sickle cell trait.  Medical Records, ECF No. 79, PageID.3525.  Two of these challenges are of primary relevance to the present motion.

First, Evans says that complications from his diabetes have led to frequent infections in his toes, and in one instance, the BOP failed to respond to his concerns in a timely manner, leading to a hospitalization in February 2024 to treat an infection that had spread to his bone. ECF No. 76-6, PageID.2804. These infections appear to have recurred since at least 2019 and generally are accompanied by ulcerous open wounds and necrotic tissue. His toenails have fallen off on multiple occasions, and at one point Evans reportedly removed a toenail on his own. ECF No. 76-5, PageID.2475. In his motion, Evans says that his toe was "amputated" during the infection that led to his hospitalization. There is no indication in the health records that an entire toe was amputated or clear information about the extent of the surgical intervention. Nevertheless, the records do suggest that medical staff regularly has removed infected tissue from his wounds. *E.g.*, *id.* at PageID.2408-2411. The BOP also has provided him wound care materials and medical shoes. *E.g.*, 76-6, PageID.2752, 2756.

Next, in his reply brief, Evans reports a concern with his heart. He states that he had testing in February 2025, which revealed that he may need a coronary artery bypass graft or a stent in the future. ECF No. 79, PageID.3524. According to his doctor's notes from that visit, his medical team planned to schedule a follow up appointment for further action. No additional medical records in the record describe the results of any follow-up appointments. Evans states that he was informed by a member of his prison's medical team that he may be transferred to a BOP medical facility because his "medical needs exceed[] what [they] can do for him." *Id.* at PageID.3512.

Evans, who is now fifty years old, presently is confined at FCI Schuylkill in Pennsylvania. He now has served just under 60 percent of his prison term. According to the BOP's website, he is scheduled to be released from custody on March 25, 2029, approximately five months later than when the Court previously considered his requests. The government explains that the date change

is because Evans committed three disciplinary violations and lost "good conduct" time.  In the two most recent violations, from 2023 and 2025, Evans admitted to possessing a cell phone.  Disciplinary Record, ECF No. 73-3, PageID.1563.

After exhausting his administrative remedies, Evans filed his third motion for compassionate release on January 27, 2025, citing the health issues discussed above.  The government responded, and Evens filed a reply brief.

## II.

By now it is well understood that, generally, "a federal court 'may not modify a term of imprisonment once it has been imposed,'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)), and that this "rule comes with a few exceptions, one of which permits compassionate release," *ibid*.  The request for such relief must be presented by a motion filed in federal court, either by the Director of the Bureau of Prisons, 18 U.S.C. § 3582(c)(1)(A), "[o]r it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier,'" *Alam*, 960 F.3d at 832 (quoting 18 U.S.C. § 3582(c)(1)(A)).

Compassionate release is a concept that has come to be recognized as authorized by Congress in section 3582(c)(1)(A).  It is an exception to the "rule of finality," which prohibits district courts from modifying a sentence "except in limited circumstances."  *United States v. Hunter*, 12 F.4th 555, 561, 569 (6th Cir. 2021).  There are three requirements that must be satisfied before relief can be granted under this section, the first of which is that "extraordinary and compelling reasons warrant [a sentence] reduction."  *United States v. Elias*, 984 F.3d 516, 518 (6th

Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).  For the second requirement, the Court must "ensure 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Nicholson*, No. 21-1724, 2023 WL 4447881, at *2 (6th Cir. July 11, 2023) (quoting 18 U.S.C. § 3582(c)(1)(A)).  Finally, the Court must "'consider[] the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable.'" *Ibid.*

"[I]f each requirement is met, a court may — but need not — reduce a term of imprisonment." *Ibid.* (citing 18 U.S.C. § 3582(c)(1)(A)).  On the other hand, "[i]f any of the requirements are not met, a court cannot reduce a sentence." *Ibid.*

### A.

The court of appeals has observed that the determination of what constitutes "extraordinary and compelling circumstances," which previously was regarded as a "highly discretionary decision of the district court, as broadly suggested by the Supreme Court in *Concepcion v. United States*, 597 U.S. 481 (2022), has been severely and categorically cabined." *United States v. West*, 70 F.4th 341, 347 n.1 (6th Cir. 2023) (citing *United States v. McCall*, 56 F.4th 1048, 1074-76 (6th Cir. 2022) (Gibbons, J., dissenting)).  That has led the court to observe that it "has predominantly defined what can constitute 'extraordinary and compelling' reasons for release by defining what circumstances *cannot* be 'extraordinary and compelling.'"  *West*, 70 F.4th at 346 (citing *Hunter*, 12 F.4th at 570 (6th Cir. 2021).  In accord with that trend, the Sixth Circuit broadly has recognized that typical circumstances attending incarceration and personal factors routinely considered at sentencing cannot supply "extraordinary and compelling" grounds for compassionate release.  The factors that may not be considered include (1) the defendant's culpability and role in a criminal scheme, (2) sentencing disparities between the movant and his co-defendants, (3) the proportion of a custodial term already served, (4) the defendant's successful efforts at rehabilitation while

confined, and (5) nonretroactive Sentencing Guideline amendments. *Hunter*, 12 F.4th at 570-72; *United States v. Scott*, No. 22-3737, 2023 WL 5671313, at *1 (6th Cir. May 4, 2023) ("[A]lthough Scott has served more than 70% of his sentence, as the district court aptly noted, 'an inmate serving the majority of his sentence is commonplace and ordinary, not extraordinary.'"); *McCall*, 56 F.4th at 1065-66.

In November 2023, the Sentencing Commission amended the Sentencing Guidelines policy statement covering compassionate release motions. Several provisions in those amendments bear on the types of medical conditions that might constitute extraordinary or compelling reasons, which naturally transition the analysis to step two of the protocol.

B.

Evans principally argues that he is not receiving adequate medical care within the prison facility. Two of the Sentencing Commission's amended policy statements are relevant to this argument. The first is section USSG § 1B1.13(b)(1)(B), which explains that a defendant's serious medical or functional *impairments* can be an extraordinary and compelling circumstance warranting a sentence modification. To qualify, a defendant must show that he is either "(i) suffering from a serious physical or medical condition," "(ii) suffering from a serious functional or cognitive impairment," or is "(iii) experiencing deteriorating physical or mental health because of the aging process" and that at least one of these conditions "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and . . . he . . . is not expected to recover." *Ibid.* The second relevant provision is section 1B1.13(b)(1)(C), which permits a finding of extraordinary and compelling circumstances where a "defendant is suffering from a medical condition that requires long-term or specialized medical care that is not

- 7 -

being provided and without which the defendant is at risk of serious deterioration in health or death." *Ibid.*

Evans focuses on his recurrent diabetic-associated toe infections and his heart condition. Neither, considered alone or together, satisfies the policy statements.

As an initial matter, it is plain that both conditions are sufficiently serious. Although it is difficult to ascertain the present status of either ailment because of the lack of medical information in the record post-dating February 2025, coronary artery blockages are serious medical concerns. The situation with Evans's toe infections may be less obviously serious, but one would be hard pressed to argue that *open wounds*, recurring since 2019, are merely a casual medical complaint. As Evans doubtless knows, a persistent wound renders a person vulnerable to life-altering infections. *Cf. United States v. Freeman*, No. 09-30033, 2023 WL 6973210, at *4 (C.D. Ill. Oct. 23, 2023) (holding that a prisoner had established extraordinary and compelling reasons where his recurrent foot infections had left him wheelchair and release might lead to a reduction in his exposure to "prison-borne infectious bacteria which thus far have led to antibiotic resistance and amputation"); *but see United States v. Pierce*, No. 22-79, 2025 WL 1171587, at *3 & n.20 (E.D. Pa. Apr. 22, 2025) (collecting cases concluding that situations "involving amputations caused by uncontrolled diabetes" do not merit compassionate release).

Evans has received ongoing treatment for both medical conditions from BOP and external providers, so section 1B1.13(b)(1)(C), which requires a finding that care is not adequately being provided, does not support relief here. In his reply brief, Evans takes issue with the timeliness of follow-up appointments for his heart condition, but no information about these appointments has been made part of the record, nor is there any indication that Evans's cardiologist deemed his condition so acute as to require immediate intervention, as reflected by his note that medical staff

would decide whether he needs open heart surgery "in [the] future." ECF No. 79, PageID.3524. Indeed, Evans's statement in his reply that prison officials likely will transfer him to a medical facility further supports the idea that he is receiving necessary care within the BOP.

The application of subsection (b)(1)(B) presents a closer call. That policy statement requires that Evans demonstrate that his serious medical condition "substantially diminishes" his ability "to provide self-care" within the prison and be one from which he is not expected to recover. USSG § 1B1.13(b)(1)(B).

Evans has not made that showing. Although diabetes is a chronic health condition and Evans has struggled with foot infections for many years, it remains possible that he will overcome the chronicity of infections. And while prison is hardly an ideal setting for wound care, the record suggests Evans is otherwise capable of providing for his basic needs. As the government points out, he has been able to maintain a job in prison and has taken advantage of educational programs. Evans's condition, for instance, is not as severe as the defendant in *Freeman*, who had suffered from antibiotic-resistant infections and ultimately had been forced to use a wheelchair. *Freeman*, No. 09-30033, 2023 WL 6973210, at *4. *Cf. United States v. Caldwell*, No. 20-20071, 2022 WL 3716034, at *3 (C.D. Ill. Aug. 29, 2022) (finding no extraordinary and compelling reasons where the inmate had two toes amputated due to complications from uncontrolled diabetes, the prison had provided specialized shoes and other care, and there was no indication that he could not provide self-care in the prison setting). Evans also has not explained how his heart condition interferes with his ability to care for himself and will not ultimately be addressed by the procedure he seeks.

Although the Court once found that Evans had demonstrated extraordinary and compelling reasons for release, this finding came during the depths of the COVID-19 pandemic. In ruling on

his second motion for compassionate release, the Court observed that the risk of infection in prison had declined substantially, ECF No. 59, PageID.1423, and the same remains the case today due to the availability of vaccinations. After nearly six years, it does not appear that Evans and his medical staff have been able to develop a treatment plan to fully address the recurrent toe infections. But Evans's medical records, which span thousands of pages, make abundantly clear that his needs have not gone ignored, and he appears to be otherwise managing adequately. Therefore, Evans has not established extraordinary and compelling reasons for release according to the Sentencing Commission's policy statements reflected in the amended Guidelines.

The amendments to the Guidelines pose another burden on defendants seeking a reduction in their sentences. The Court must determine that a defendant is not "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(a)(2). Previously, that requirement was not applicable to defendant-initiated motions. *United States v. Sherwood*, 986 F.3d 951, 953-54 (6th Cir. 2021). Under the re-written policy statement, however, defendants must satisfy the requirement, because the amended Guidelines make the policy statements applicable to motions brought by both the BOP and the defendant. *See* Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28254, 28254-59 (May 3, 2023); *see also United States v. Randall*, No. 23-5144, 2023 WL 6389604, at *3 n.1 (6th Cir. Oct. 2, 2023) (noting that the amendments would apply the policy statements to defendant-filed motions).

Evans has not met that requirement. The Court's earlier opinions denying him compassionate release recognized that "protection of the public" from Evans' drug-dealing was the "paramount" factor in his sentence. Order Denying Mot. Compassionate Release, ECF No. 43, PageID.801. Evans points out that his score on the BOP's PATTERN risk assessment tool suggests he has a "minimum" risk of recidivism. As a technical matter, his records state that his

recidivism risk is classified as "low," rather than minimum.  *See* ECF No. 73-5, PageID.1567.
Regardless, Evans' recent prison disciplinary incidents are a worrying sign.  And even if he could
demonstrate that he does not pose a danger to the safety of the community, the section 3553(a)
factors likely do not support release.

C.

Because the defendant cannot demonstrate that extraordinary and compelling reasons
support his release, the Court need not evaluate the section 3553(a) factors.  *United States v.*
*Navarro*, 986 F.3d 668, 670 (6th Cir. 2021).  Even if he could demonstrate such reasons, however,
several aspects of the record undercut his argument that the sentencing factors support release at
this time.  In its previous orders denying compassionate release, the Court observed:

> The sentence in this case was driven largely by the mandatory minimum prison
> term required for individuals possessing a firearm during a drug trafficking crime,
> 18 U.S.C. § 924(c)(1)(A)(ii), together with the grave consequences of the
> defendant's heroin dealings.  The Court determined at the time that the sentence
> was necessary to achieve the goals of sentencing Congress identified in 18 U.S.C.
> § 3553(a).  One of the goals — protection of the public — was paramount in this
> case.  Although one of Evans's customers did die from a heroin overdose, the Court
> noted that "[t]here [was] no proof, at least proof beyond a reasonable doubt, that
> the drugs that Mr. Evans sold were the drugs that caused the victim's death."
> Sentencing Hrg Tr., ECF No. 19, PageID.91.  The government nevertheless insists
> that Evans is a menace, arguing that "[f]or years, Evans persistently inflicted that
> [] heightened danger presented by the combination of firearms and drugs, even
> worse, heroin, on the community of Ypsilanti, the same community to which he
> now seeks release." Response, ECF No. 40, PageID.408.  It emphasized that Evans
> continued to sell drugs even after M.H. died in 2015.  That fact was not lost on the
> Court at the time of sentencing.
>
> The sentence in this case (as in every case), and therefore a sentence reduction, also
> must promote respect for the law.  18 U.S.C. § 3553(a)(2)(A).  Evans has served
> only 24 months of his lengthy prison sentence.  And although his statements now
> are replete with remorse, and his conduct in prison over the last two years has been
> commendable, Evans has not offered a convincing argument for why he would not
> return to his former illegal methods if his sentence were reduced.

Order Denying Mot. Compassionate Release, ECF No. 43, PageID.801.

- 11 -

Since the Court made those statements, Evans has served almost five additional years of his prison sentence.  Even so, more than forty percent of his total term remains.  And his recent disciplinary violations are cause for concern.

Evans argues that the Court should consider as relevant to the section 3553(a) analysis his diminished health.  He argues that the loss of a portion of his toe and other medical needs were not intended features of his 144-month sentence.  Perhaps a case could be made that Evans's health is a relevant consideration, but his motion papers set out few other reasons that the Court should reduce his term.

III.

Evans again has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's third motion for compassionate release (ECF No. 67) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   July 11, 2025